UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID LEBOWSKI,

       Plaintiff,                      Case No. 04-74667

v.                                    Hon. Gerald E. Rosen

CITY OF SOUTHFIELD,
POLICE OFFICER SHANNON
ROBINSON, and POLICE OFFICER
SAMUEL BIGGINS,

       Defendants.
_____/

**OPINION AND ORDER REGARDING
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    May 24, 2006

PRESENT:   Honorable Gerald E. Rosen
                         United States District Judge

## I. INTRODUCTION

Plaintiff David Lebowski commenced this suit in Oakland County Circuit Court on October 6, 2004, alleging that the Defendants — including the City of Southfield and two of its police officers, Shannon Robinson and Samuel Biggins[1] — violated his civil rights under the U.S. Constitution and committed a number of state-law torts during an October

---

[1] Plaintiff also named "John Doe" police officers as additional defendants, but no officers have been substituted in place of these unknown defendants.

22, 2003 incident in which Plaintiff was arrested and allegedly assaulted as he was attempting to assist a friend who had called 911 to request medical attention. Defendants removed the case to this Court on November 30, 2004, citing Plaintiff's assertion of federal claims under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1331, 1441(a).

By motion filed on September 13, 2005, Defendants now seek summary judgment in their favor on some, but not all, of the claims advanced in Plaintiff's complaint.[2] In response, Plaintiff acknowledges that some of his claims are subject to dismissal: (i) his federal claim of an equal protection violation in Count II of his complaint; (ii) his claim, also in Count II, arising under the Michigan Constitution; (iii) his state-law claims against the City of Southfield in Counts I, III, IV, and V of his complaint; and (iv) his state-law claim of abuse of process in Count IV of his complaint. This leaves only two matters at issue in the present motion: (i) whether Plaintiff has identified a basis for the Defendant City's liability under § 1983; and (ii) whether Plaintiff has produced evidentiary support for his state-law claim of malicious prosecution against the Defendant officers.

Having reviewed the parties submissions and the remainder of the record, the Court finds that the relevant allegations, facts, and legal arguments are thoroughly presented in these materials, so that oral argument would not significantly aid the decisional process. Accordingly, the Court will decide Defendants' motion "on the

---

[2]In particular, Defendants do not challenge the viability of Plaintiff's federal Fourth Amendment and due process claims against the individual police officer defendants. Neither have Defendants challenged Plaintiff's state-law assault and battery, false arrest, and false imprisonment claims against the individual officers.

briefs." See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As noted, Plaintiff's claims in this case arise from an October 22, 2003 incident at the home of a friend, Corey Hamlet. The two men had spent the evening together, and Plaintiff dropped Hamlet off at his apartment at around 2:00 a.m. A short while later, Hamlet telephoned Plaintiff, stating that he felt sick and asking Plaintiff to bring him some soup. As Hamlet waited for Plaintiff to arrive, he also called 911, evidently reporting his belief that he was suffering from alcohol poisoning and requesting medical assistance. Defendants Robinson and Biggins, police officers employed by the Defendant City of Southfield, were dispatched to Hamlet's residence in response to this call, arriving at around 4:14 a.m.

The parties offer divergent accounts of the encounter between Plaintiff and the Defendant officers. According to Defendants, Plaintiff answered the door to Hamlet's apartment and allowed the officers to come in, but then proceeded to interfere with the officers' efforts to investigate the situation. Officer Robinson stated in his incident report that the apartment was dark, and that he observed Hamlet lying on the floor covered from head to toe with a blanket. As he began to question Hamlet, Officer Robinson observed a cigar box and an ashtray on the floor next to Hamlet, and also observed what appeared to be "several smoked blunts" in this ashtray. (Defendants' Motion, Ex. 2, Incident Report

at 2.)³  When Officer Robinson asked whether Hamlet had been smoking marijuana and whether it might have been laced with something, Hamlet reportedly told the officer to "f*** off," and stated that he wanted "medical help[,] not the police." (Incident Report at 2.)

According to Defendants, Plaintiff interjected himself into the situation at this point, telling the officers to "leave his friend alone" and protesting that "he wants an ambulance." (Id.)  In response, the officers told Plaintiff not to interfere and to exit the apartment, but Plaintiff reportedly refused to do so, and instead "began yelling at [Officer Robinson]." (Id. at 3.)  When Officer Robinson again ordered Plaintiff out of the apartment and Plaintiff again refused, the officer approached him with his arm extended straight out and his palm open.  According to Officer Robinson's incident report, Plaintiff knocked the officer's arm away and assumed a fighting stance.  In addition, Officer Robinson testified at his deposition that Plaintiff began punching him.  Officers Robinson and Biggins then took Plaintiff down to the floor and physically restrained him, and also restrained Hamlet until medical personnel arrived to attend to him.  Plaintiff was arrested, taken to jail, and charged with resisting and obstructing a police officer.

Plaintiff's account of this incident differs in several respects.  In his view, the officers from the outset seemed more interested in investigating possible crimes than in assessing Hamlet's medical condition and providing or obtaining the appropriate medical

---

³Officer Robinson explained at his deposition that he used the term "blunt" to refer to "marijuana rolled up in a cigar wrapper." (Defendants' Motion, Ex. 3, Robinson Dep. at 85.)

assistance. Plaintiff testified, for example, that upon entering the apartment, the officers immediately began shining their flashlights in Hamlet's face, looking in drawers, and kicking open a metal "safe box" that was sitting next to Hamlet on the floor. (Plaintiff's Dep. at 64.) When Plaintiff protested that the officers were irritating his friend by shining their flashlights in his face, they briefly ceased this conduct, but then began questioning Hamlet about possible drug use and again shining their flashlights at him.

Again, Plaintiff protested that the officers were making Hamlet "feel worse," and he questioned why the officers had come to the apartment when he and Hamlet had called for an ambulance. (Id. at 65.) In response, the officers told him to exit the apartment. When Plaintiff questioned why this was necessary and pointed out that Hamlet had asked him to come over, the officers responded that if he did not leave the apartment they would "arrest [him] for obstruction of justice." (Id.) Plaintiff testified at his deposition that he heeded this instruction, leaving the apartment and standing out in the hallway.

While Plaintiff was waiting in the hallway, Hamlet began crawling toward him, stating that he wanted the police to leave and Plaintiff to remain. According to Plaintiff, the police officers then grabbed Hamlet and dragged him out into the hallway. When Plaintiff verbally protested the officers' rough treatment of his friend,[4] one of the officers turned around and punched him in the face, and he was then tackled to the floor and punched in the back and head while lying face down on the ground. The officers then

---

[4] Plaintiff specifically denied at his deposition that he did anything beyond verbally complaining about the officers' conduct. (See id. at 89-90.)

5

handcuffed Plaintiff's hands behind his back, ignoring his protests that the handcuffs were too tight. Plaintiff was led out of the building, placed into a police car, and taken to jail, where he remained overnight.

Plaintiff subsequently was charged in a criminal complaint with the misdemeanor offense of resisting and obstructing a police officer. Following a jury trial, he was acquitted of this charge. Plaintiff then commenced this action on October 6, 2004, asserting federal civil rights claims under 42 U.S.C. § 1983 and state-law tort claims of assault and battery, false arrest and imprisonment, abuse of process, and malicious prosecution against Officers Robinson and Biggins and the City of Southfield.

### III.  ANALYSIS

**A.     The Standards Governing Defendants' Motion**

Through the present motion, Defendants seek an award of summary judgment in their favor as to several of the claims and legal theories advanced in Plaintiff's complaint. Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases — Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) — ushered in a "new era" in the federal courts' review of motions for summary judgment. These cases, in the aggregate, lowered

the movant's burden in seeking summary judgment. Celotex explains:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex, 477 U.S. at 322.

Upon reviewing this trilogy of Supreme Court decisions, the Sixth Circuit adopted a series of principles governing motions for summary judgment:

> \* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> \* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> \* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> \* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> \* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989); see also Nernberg v. Pearce, 35 F.3d 247, 249 (6th Cir. 1994). The Court will apply these standards in resolving Defendants' motion.

7

## B.     Plaintiff Has Failed to Identify a Viable Basis for Municipal Liability under 42 U.S.C. § 1983.

As noted, only two of the several challenges advanced in Defendants' motion remain in dispute. First, Defendants contend that Plaintiff's allegations and evidence are insufficient to sustain his federal civil rights claims against the City of Southfield. The Court agrees.

Under familiar principles, a municipal defendant such as the City of Southfield here "cannot be held liable under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents." Gregory v. Shelby County, 220 F.3d 433, 441 (6th Cir. 2000) (citing Monell v. Department of Social Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978)). Instead, "[f]or liability to attach, there must be execution of a government's policy or custom which results in a constitutional tort." Gregory, 220 F.3d at 441. Moreover, Plaintiff must establish that "through its deliberate conduct, the municipality was the 'moving force' behind" the violation of his constitutional rights — that is, he "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Gregory, 220 F.3d at 442 (quoting Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 405, 117 S. Ct. 1382, 1389 (1997)).

In this case, Plaintiff seeks to forge the requisite causal link between municipal action and the alleged deprivation of his constitutional rights by citing the City of Southfield's purported failure to properly train its officers how to respond to calls for

8

medical assistance. The Supreme Court has recognized that this "failure to train" theory, if proven, provides a basis for municipal liability under § 1983. See City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989). The Court further emphasized, however, that this theory can succeed "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." City of Canton, 489 U.S. at 389, 109 S. Ct. at 1205. This standard, in turn, can be met by showing that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." 489 U.S. at 390, 109 S. Ct. at 1205.

The Court further explained:

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

489 U.S. at 390-91, 109 S. Ct. at 1206 (citations omitted). Finally, the Court observed

that "for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." 489 U.S. at 391, 109 S. Ct. at 1206.

Plaintiff's allegations and evidence in this case are inadequate in two respects to establish the City of Southfield's liability under a "failure to train" theory. First, while Plaintiff asserts that the City does not train its police officers "at all" in how to respond to calls for medical assistance, (see Plaintiff's Response Br. at 6), the record belies this contention. In particular, Defendants point to Officer Robinson's deposition testimony that, as part of his police academy coursework, he was taught basic first aid techniques and received training as a "first responder" who could assess medical needs and "relay that information to trained medical professionals." (Defendants' Motion, Ex. 3, Robinson Dep. at 21, 29-33.) Officer Robinson further testified that the City gave him a "refresher course" on these subjects since he joined the municipal police force. (Id. at 34.) Thus, Plaintiff cannot prevail under the theory that the City wholly failed to provide any training whatsoever to its officers who are the first to respond to calls for medical assistance.

Next, and more importantly, Plaintiff has not shown that any deficiencies in this aspect of the defendant officers' training had any causal connection to his claimed injuries. Notably, Plaintiff was not in need of medical assistance, but rather claims that the defendant officers reacted inappropriately to his efforts to obtain such assistance for his ailing friend. Thus, while further or better medical training perhaps could have

10

benefitted Plaintiff's friend, it would not have taught the officers how to properly deal with an interested bystander as they attempted to fulfill their role as first responders. In particular, the officers were unlikely to learn in such training that they should not assault, arrest, or use excessive force upon bystanders who, according to Plaintiff's testimony, are merely seeking to ensure, through nonviolent and wholly verbal means, that the officers are focused on and attending to the medical needs of a friend.

Whether the defendant officers had arrived on the scene because of a call for medical assistance or to investigate suspected criminal activity, Plaintiff presumably would view the officers' alleged treatment of him as equally improper. Taking Plaintiff's version of events as true, the officers overreacted to, arrested, and used excessive force against someone who, at worst, was a bothersome intermeddler. Yet, Plaintiff has failed to identify any connection between this alleged mistreatment and a purported deficiency in the officers' training. Rather, he seemingly invites the Court to infer from this single episode that the officers must have been improperly trained, and that the defendant City was deliberately indifferent to the need for better training. The case law precludes such inferences, however. See Thomas v. City of Chattanooga, 398 F.3d 426, 432-33 (6th Cir. 2005) (rejecting an "attempt[] to infer a municipal-wide policy based solely on one instance of potential misconduct"); see also Miller v. Calhoun County, 408 F.3d 803, 815-16 (6th Cir. 2005) (observing that the "deliberate indifference" standard for municipal liability "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures," and

11

finding that the plaintiff's claim of inadequate training failed for lack of evidence of a "history of similar incidents" that would have put the defendant "on notice" of a need "to take meliorative action"). Accordingly, the Court finds that the defendant City of Southfield is entitled to summary judgment in its favor on Plaintiff's federal § 1983 claims.[5]

**C.   Plaintiff Is Entitled to Go Forward on His State-Law Claim of Malicious Prosecution Against the Defendant Police Officers.**

The sole remaining point of dispute between the parties, at least for present purposes, concerns Plaintiff's state-law claim of malicious prosecution against the defendant police officers. Defendants argue in their motion that, under Michigan law, a police officer can be held liable for malicious prosecution only if he knowingly swears to false facts in a complaint. Defendants further assert that the record in this case fails to provide this necessary factual predicate to a claim of malicious prosecution. In response, Plaintiff argues that Defendants have misstated the law governing this claim, and that, in any event, the evidence is sufficient to sustain a claim under either party's view of the law. While the Court finds that Defendants have more accurately characterized the Michigan law in this area, the Court agrees with Plaintiff that outstanding issues of material fact preclude the Court from resolving this claim in the defendant officers' favor as a matter of law.

---

[5] In light of Plaintiff's various concessions in his response to Defendants' motion, this ruling disposes of the last remaining claim against the defendant City.

The parties are in agreement as to the four basic elements of a claim of malicious prosecution under Michigan law. Specifically, "[t]he plaintiff has the burden of proving (1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose other than bringing the offender to justice." Matthews v. Blue Cross & Blue Shield, 456 Mich. 365, 572 N.W.2d 603, 609-10 (1998). The parties further agree that the criminal proceedings against Plaintiff terminated in his favor when he was acquitted following a jury trial.

Beyond this, however, the parties disagree as to how the remaining elements of a claim of malicious prosecution should be construed where, as here, the claim has been brought against a police officer. As the Michigan Supreme Court has observed, public prosecutors possess the "independent authority to initiate criminal prosecutions." Matthews, 572 N.W.2d at 613. "Thus, in Michigan, the prosecutor's exercise of his independent discretion in initiating and maintaining a prosecution is a complete defense to an action for malicious prosecution." 572 N.W.2d at 613. From this general proposition, it follows that individuals who lack such authority and discretion, such as police officers and private persons, can be liable for malicious prosecution only if they knowingly furnish false information that the prosecutor relies and acts upon in initiating criminal proceedings. See Matthews, 572 N.W.2d at 613-15; see also Payton v. City of Detroit, 211 Mich. App. 375, 536 N.W.2d 233, 242-43 (1995). As this Court recently

13

explained, "the case law confirms that a prosecutor's charging decision does not automatically insulate a police officer from liability for false statements in an incident report relied upon by the prosecutor." Strutz v. Hall, 308 F. Supp.2d 767, 787 (E.D. Mich. 2004); see also Adams v. Metiva, 31 F.3d 375, 388-89 (6th Cir. 1994).[6]

In this case, the defendant officers prepared incident reports of their October 22, 2003 encounter with Plaintiff, and Defendants do not contend that the prosecutor disregarded these reports or conducted and relied upon an independent investigation in electing to charge Plaintiff with the misdemeanor offense of resisting and obstructing a police officer. Instead, Defendants broadly assert that there is no evidence that the officers knowingly made false statements in these reports. Yet, a reasonable trier of fact certainly could conclude otherwise, in light of the considerable differences between the events as recounted in these incident reports and in Plaintiff's deposition testimony. For example, Officer Robinson states in his incident report that Plaintiff blocked the doorway to his friend's apartment, physically knocked the officer's arm away, and assumed a fighting stance, while Plaintiff denies that he physically resisted the officers in any way.

---

[6]While Plaintiff cites certain Michigan model jury instructions as purportedly reflecting a different legal standard, Defendants correctly points out that these instructions are not intended as binding authority, but merely purport to summarize the relevant case law — including, of course, the decisions cited by Defendants and relied upon by the Court in this case. In any event, the instructions cited by Plaintiff merely set out the general elements of a claim of malicious prosecution, while the case law identified by Defendants and reviewed by the Court addresses the proper application of these elements in the specific context of malicious prosecution claims brought against police officers. These decisions, in the Court's view, provide considerable guidance — and, indeed, are controlling Michigan authority — in determining whether a police officer can be said to have initiated a criminal prosecution without probable cause.

These factual disputes regarding the truthfulness of the defendant officers' accounts in their incident reports must be resolved by the trier of fact. See Strutz, 308 F. Supp.2d at 787.[7]

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' September 13, 2005 motion for summary judgment is GRANTED IN PART and DENIED IN PART, in accordance with the rulings in this opinion and order.


Dated: May 17, 2006                 s/Gerald E. Rosen
                                    Gerald E. Rosen
                                    United States District Judge



I hereby certify that a copy of the foregoing document was served upon counsel of record on May 24, 2006, by electronic and/or ordinary mail.

                          s/LaShawn R. Saulsberry
                          Case Manager

---

[7]Apart from this state-law claim of malicious prosecution, Plaintiff also has advanced a state-law claim of assault and battery against the defendant officers that is not at issue in the present motion. Plaintiff has conceded, however, that he has failed to state a viable state-law claim of abuse of process against the defendant officers. Finally, Plaintiff's § 1983 claims against the officers are not at issue in the present motion, except that Plaintiff has acknowledged that his claim of a federal equal protection violation lacks evidentiary support.